UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TOMPOS,

        Plaintiff,                              Civil Case No. 13-13580
                                                 Honorable Linda V. Parker

v.

CITY OF TAYLOR et al.,

        Defendants.
_____/

**<u>OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 23) AS TO THE FEDERAL CLAIM ONLY; REMANDING STATE LAW CLAIM PURSUANT TO 28 U.S.C. § 1367(c)(3); AND DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER (ECF NO. 20) AS MOOT</u>**

Plaintiff Robert Tompos ("Plaintiff") was terminated from his position as Chief of the Fire Department of the City of Taylor, and sues Defendant Jeffery Lamarand and Defendant City of Taylor (collectively "Defendants"). His lawsuit includes a count based on 42 U.S.C. § 1983, grounded on the assertion that his termination violated the First Amendment's speech protection clause. (Comp1., ECF No. 1-2 at Pg. ID 10–12.) Plaintiff also claims that his termination violated state law, specifically the Michigan Whistleblowers' Protection Act, Mich. Comp. Laws §§ 15.361–15.369. (*Id.* at 9–11.) Defendants removed the matter to this Court pursuant to the Court's federal question jurisdiction, *see* 28 U.S.C. §§ 1331, 1441(a), and have filed a motion for summary judgment pursuant to Federal Rule

1

of Civil Procedure 56. (ECF Nos. 1, 23.) A motion hearing was held on February 11, 2015, at which the Court heard argument of the parties through their respective counsel in open court. For reasons that follow, the Court **GRANTS IN PART** Defendants' motion for summary judgment, **REMANDS** Plaintiff's remaining claim brought under the Michigan Whistleblowers' Protection Act to the Wayne County Circuit Court, and **DENIES AS MOOT** Defendants' motion for protective order, filed March 27, 2014.

## I.

Defendant City of Taylor is a local government unit located in Wayne County. Defendant Jeffery Lamarand is the former mayor of the City of Taylor, who died on October 19, 2014. Plaintiff became the Fire Department Chief on June 21, 2011. (Compl., ECF No. 1-2 at Pg. ID 9.) During Plaintiff's employment as fire chief, Defendant Lamarand made various budgetary reductions, including reductions to the fire department. (Pl.'s Resp. Br., ECF No. 27 at Pg. ID 427.) Defendants allege that the reductions were brought about as a result of the deficit the city was facing. (Def.'s Mot., ECF No. 23 at Pg. ID 230.) Beginning in 2011, and continuing through the remainder of his employment, while serving as fire chief, Plaintiff made verbal complaints and reports to Defendant Lamarand, City of Taylor City Council and its members, as well as to news reporters and media outlets. (Compl., ECF No. 1-2 at Pg. ID 9.) Specifically, Plaintiff stated that:

(a) Protective clothing and gear used by firefighters [were] out of date, out of compliance with applicable safety standards, dangerous to the firefighters using it, and could cause significant injury or death to firefighters;
(b) Reduced staffing of the Fire Department slowed response times and posed a danger to the public;
(c) Reduced staffing of the Fire Department posed a danger to responders;
(d) Reduced staffing meant that the Fire Department could not operate within applicable safety standards; and
(e) Defendant Lamarand wrongfully removed $60,000 from the City budget.

(*Id.*)

Plaintiff alleges that Defendant Lamarand, both personally and through his agents, warned Plaintiff to "watch what he said to the media"; repeatedly threatened Plaintiff with termination; removed duties from Plaintiff; interpreted, monitored, and intercepted Plaintiff's reports to the City Council, thereby preventing Plaintiff from making reports to the City Council. (*Id.* at 9–10.) On April 19, 2013, Defendants terminated Plaintiff, alleging budgetary reasons and the elimination of his position. (*Id.* at 10.) Thereafter, Plaintiff filed his lawsuit. (Compl., ECF No 1-2.) Subsequently, Defendant filed its motion for summary judgment. (Def.'s Mot., ECF No. 23.)

## II.

Summary judgment must be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a

3

material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In deciding a summary judgment motion, the evidence 'must be viewed in the light most favorable to the party opposing the motion.'" *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Likewise, the burden of establishing the nonexistence of a material factual dispute always rests with the movant. *Id.* (citing *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.1979)) (quotations omitted).

### III.

"The First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, prohibits state governments and their political subdivisions from retaliating against most forms of citizen speech." <u>Roupe v. Bay Cnty.</u>, 268 F. Supp. 2d 825, 830 (E.D. Mich. 2003) (citations omitted). Citizens who are also public employees retain this protection, provided that (1) their speech raises a matter of public concern, and (2) that their interest in speaking is not outweighed by their employer's interest in maintaining workplace harmony and effectiveness. *Id.* The second prong invokes the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, (1968), calling upon the court to

4

determine whether the employee's interest in speaking as he did outweighed Defendants' interests in keeping him silent. *Roupe*, 268 F. Supp. 2d at 830 (citing *Bonnell v. Lorenzo,* 241 F.3d 800, 809 (6th Cir. 2001) (further citations omitted).

Also existing is a parallel line of cases addressing the First Amendment rights of public employees who hold certain patronage positions. *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980). The government has an interest in securing employees who will loyally implement the policies of its democratically elected officials. *Elrod*, 437 U.S. at 367. Further, public employees holding positions of confidence or policymaking may be dismissed solely on the basis of their political affiliation without offending the First Amendment. *Elrod*, 427 U.S. at 367; *Branti*, 445 U.S. at 517. The Sixth Circuit has further opined that "where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Rose v. Stephens,* 291 F.3d 917, 921 (6th Cir. 2002). This rule "simply recognizes the fact that it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employer, and as the Supreme Court has recognized, 'employees may always be discharged for insubordination.'" *Id.* (citing *Elrod*, 427 U.S. at 366). "Permitting the government to dismiss employees who fall within the policymaking or confidential categories

5

when they voice opinions on political or policy-related issues is an appropriate means of promoting [the government's legitimate interest in securing employees who will loyally implement its policies], because the government already enjoys the right to choose or dismiss those employees on the basis of their political views." *Id.* at 922 (citing *Rutan v. Republican Party of Illinois*, 49 U.S. 62, 74 (1990)).

Again, where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the Pickering balance favors government as a matter of law. *Id.* at 924. Accordingly, the Court must determine: (1) whether Plaintiff occupied a policymaking or confidential position; and (2) whether Plaintiff's speech addressed matters related to politics or policy. *Id.*

### IV.

In determining whether a plaintiff occupied a policymaking or confidential position, the Sixth Circuit "has outlined four general categories that satisfy this standard." *Id.* They are as follows:

> **Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has

6

been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

**Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors.

**Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Id.* (citing *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996)).

During interrogatories, Plaintiff was asked to describe in detail all of his employment duties and responsibilities, to which defendant responded: "Please see the job description for the position in the Rules and Regulations approved for the Taylor Fire Department and were in place during Plaintiff's Employment." (Tompos Interrogatory 2, ECF No. 23-8 at Pg. ID 310.) The Fire Department rules and regulations provide that the fire chief among other things is responsible for: (1) removing and disciplining firefighters; (2) investigating reports – made by employees or the public – of violations of law, ordinances, and orders governing the department public; (3) visiting and inspecting the fire department; (4) and maintaining efficiency of the fire department. (Fire Department Rules and

7

Regulations, ECF No. 23-9 at Pg. ID 315.) Further, the rules and regulations also provide in relevant part:

> (3) The fire Chief shall be the Chief Executive Officer of the Fire Department. He/she shall devote his time and attention to the discharge of the duties of the welfare of his/her office and give prompt and efficient attention to all matters concerning the welfare of the Department and the Public. His/her authority, responsibilities and duties are as follows:
>
> (a) It shall be his/her duty to direct the observance and enforcement of all fire prevention laws of the State of Michigan, and the ordinances of the City of Taylor, the enforcement and observance of which devolves upon the Fire Department, and he/she shall issue from time to time such orders as may be necessary to facilitate his/her duty.

(*Id.* at Pg. ID 313.)

Plaintiff, while being deposed conceded that Fire Department Rules and Regulations were in effect at the time Plaintiff was appointed fire chief. (Tompos Dep., ECF No. 23-2 at Pg. ID 271.) Thus, having reviewed the Fire Department Rules and Regulations, it is clear that Plaintiff, while fire chief, possessed discretionary authority with respect to the enforcement of the fire prevention laws of the state of Michigan, as well as the carrying out of various department policies that were important to public safety. The fire chief is appointed by the Mayor of the City of Taylor, thus the position is not named in law. However, the fire chief possesses the same discretionary authority as a Category One position – mainly, the carrying out of policies of political concern. Thus, it is clear that Plaintiff

8

occupied a policy making position and the first requirement of the *Rose* analysis is met.

### V.

The Court must now determine whether Plaintiff's speech, which allegedly provoked the adverse employment action, addressed political or policy related issues. "The Sixth Circuit directs lower courts to examine the content of speech, since statements touching on matters of public concern that *do not* implicate policy, betray confidence, or portend disloyalty cannot support the *Elrod/Branti* exception." *Roupe*, 268 F. Supp. 2d at 833 (emphasis added). It is readily apparent that Plaintiff's statements to media and city council implicated policy.

Plaintiff stated that: (1) gear used by firefighters was out of date and posed dangers to firefighters; (2) because of reduction in staffing, the fire department has slower response times, "poses a danger to the public," and has resulted in the fire department being unable to operate within applicable safety standards; and (3) Defendant Lamarand wrongfully removed $60,000 from the City budget. (Compl., ECF No. 1-2 at Pg. ID No. 9.) These statements demonstrate that Plaintiff was critical of the Mayor's policy decisions and management of the Fire Department. Plaintiff, a policymaking public employee, made public statements that criticized budgetary decisions that the Mayor publicly espoused, and in doing so, Plaintiff overtly expressed his disloyalty to Defendant Lamarand and Defendant City of

9

Taylor. "When such an employee speaks in a manner that undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the working relationship between a confidential employee and his superiors." *Rose*, 291 F.3d at 923 (citing *Pickering*, 391 U.S. at 570 n. 3). "[T]he government's interest in appointing politically loyal employees to certain positions converges with its interest in operating an efficient workplace when dealing with policymaking employees because loyalty by those employees is an essential requirement for the efficient functioning of the workplace." *Id*.

Accordingly, because Plaintiff was an employee in a policymaking position and was terminated for speech related to his policy views, the Pickering balance favors the government as a matter of law, and the Court therefore finds that Plaintiff was not engaged in speech protected by the First Amendment. Thus, Defendant is entitled to summary judgment as to Plaintiff's § 1983 claim.

## VI.

The case at hand was removed to this Court based on federal question jurisdiction. Having eliminated the federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claim, brought under the Michigan Whistleblowers' Protection Act, and the Court makes no determination as to the claim's continuing viability. "A district court has broad discretion in

deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical. Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996) (citation omitted). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati,* 625 F.3d 949, 952 (6th Cir.2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d at 1254–1255 (6th Cir.1996)) (quotation marks omitted). A district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

For the reasons stated above, the Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's §1983 free speech-retaliation action. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines supplemental jurisdiction over the remaining state law claim brought under the Michigan Whistleblowers' Protection Act, and **REMANDS** said claim to the Wayne County Circuit Court. Further, Defendants' motion for protective order (ECF No. 20) may, perhaps, be relevant in the state court proceedings, but the motion is irrelevant to the determination of

Plaintiff's federal claim, and is accordingly **DENIED AS MOOT**.

      **SO ORDERED**.

      s/ Linda V. Parker
      LINDA V. PARKER
      U.S. DISTRICT JUDGE

Dated: March 13, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 13, 2015, by electronic and/or U.S. First Class mail.

      s/ Richard Loury
      Case Manager